PER CURIAM.
The questions presented for our determination herein are whether we should approve the findings of facts made by the Commissioner heretofore appointed by this Court as the trier of the facts and whether we should accept and follow his recommendation. We quote the Commissioner’s report in full:
“COMMISSIONER’S REPORT
“A petition for writ of habeas corpus was filed by Robert Shuler and Jerry Chat-man in the Supreme Court of Florida on September 25, 1962; Rule to Show Cause was issued on September 26, 1962, and respondent’s return to Rule to Show Cause was filed on or about October 11, 1962.
*4 “The undersigned circuit judge (retired) was appointed commissioner to take such testimony and receive such evidence as should be deemed necessary, and make report to the court, with recommendations, on the following issues:
“A. Whether petitioner’s capital conviction for the crime of rape (July 7, 1960) was illegally obtained in violation of rights assured them under either the Florida or Federal Constitutions.
“B. Whether the state attorney who prosecuted petitioners, the Honorable Gordon G. Oldham, Jr.; the sheriff of Lake County, Florida, wherein the crime was committed, Willis V. McCall and two of his deputies (Lucius Clark and James L. Yates) either independently or in some degree of concert violated their respective offices by suppressing evidence allegedly made available to them.
“C. Whether any or all of the individuals named immediately above falsified evidence of footprint impressions.
“D. Whether the atmospheric conditions at or about the time the crime was committed were such as would have obliterated any available footprint evidence.
“E. Whether said state attorney and/or said sheriff counseled, procured, suggested or in any way indicated that any evidence either could or should have been manufactured (falsely) so as to firm up the prosecutions case against petitioners.
“F. Whether deputies Lucius Clark and/or James L. Yates falsified the footprint (casts) evidence which ultimately was used in petitioners’ trial.
“Pursuant to this Court’s order dated November 21, 1962, a hearing as directed thereby, was held in the courtroom of the Circuit Court in and for the Fifth Judicial Circuit at Tavares, Lake County, Florida, on the 14th ■ and 15th days of March, 1963. At said hearing, testimony and evidence was presented by and on behalf of the petitioners as well as the respondent; said testimony and evidence being heard and viewed by the undersigned.
“Petitioners were represented by counsel, the Honorables Francisco A. Rodriguez, H. L. Braynon, and G. E. Graves, Jr. and the respondent was represented by Assistant Attorneys General James G. Ma-horner and George R. Georgieff.
“The proceedings were recorded and transcribed by the official court reporter and may be found within the bound volumes encompassing pages 1 through 270 plus the attached statements and testimony of certain individuals as well as the physical exhibits (number 1 through 10) introduced during the course of the hearing.
“With respect to the petitioner’s allegations as summarized by Subsection B above, the evidence adduced at the hearing reveal the following:
“The matter embraced by this allegation appeared limited to the statement of the victim of the rape, one Charlotte Wass, the full text of which may be found in plaintiffs’ (petitioners’) Exhibit # 10. Petitioners’ insist that the content of said statement when read in conjunction with Exhibit A (the victim’s subsequent note of November 1, 1960, sent to a Mrs. Claret from the state hospital at Chattahoochee, Florida) which was made a part of their original petition for writ of habeas corpus, reveals a calculated suppression of evidence on the part of prosecution and law enforcement. Historically, your commissioner obsei'ves that the victim’s statement, though taken shortly after the rape occurred is so disjointed and susceptible to any one of several analyses, that its use as the basis for such a claim is almost valueless. It is observed that the victim did not even know whether she was conscious at the time she was raped. It is further observed that there would be little if any difference in the result even if her fragmentary recollection could be said to be possessed of any degree of accuracy what *5 ever. Certainly petitioners were principals each to the other when they perpetrated this crime.
“Your commissioner further finds that the victim’s holographic note as embraced in petitioners’ Exhibit A was executed by her at a time when she was confined in the state hospital for the insane at Chattahoochee as a result of a court order declaring her to be incompetent. The date of her note, November 1, 1960, indicates that at least seven (7) months prior thereto she had been declared incompetent (Respondent’s Exhibit K-Return to Writ of Habeas Corpus) by reason of which she was not even available as a witness for the state in the prosecution of petitioners.
“Quite apart from the above, it seems apparent from both of petitioners’ confessions as to their complicity in the rape of the victim that her subsequent statement is at least open to serious doubt. This is particularly so since there seems to be little question that she was unconscious throughout the two rapes perpetrated upon her.
“Your commissioner further finds that the state attorney had the right and duty to assess the value of the statement in question and in so doing, if he found it wanting in any material particulars, to reject it as the basis of any proof or evidence whether in favor of petitioners or against them. This is so especially when viewed in light of the fact that the victim herself simply was not available (and is not even now) as a witness to bear out any of the remarks attributed to her either in her statement or in her subsequent letter.
“It is your commissioner’s conclusion that insofar as an alleged suppression of evidence with reference to this matter is concerned, I specifically find against petitioners’ contention, there having been no proof or evidence of sufficient magnitude adduced which would cause me to reach any other conclusion.
“With respect to the petitioners’ allegations as summarized by Subsection C above, the evidence adduced at the hearing reveals the following:
“The allegations in the petition which embrace this matter are, in essence, that former deputies Lucius G. Clark and James L. Yates poured the plaster of paris footprint impressions which were ultimately used as evidence against petitioners in the backyard of Clark’s home rather than at the scene of the victim’s home where the rape occurred. See petition for writ of habeas corpus and the attached statement of former deputy Thomas L. Ledford and Noel E. Griffin, Jr.
“In answering the aforesaid allegations, the respondent in his return to the writ issued by this Court included the sworn statements of deputies Clark and Yates as Exhibits E and I, both of which reveal unqualified denials of every allegation bearing on their alleged falsification of the footprint evidence either in the manner suggested by petitioners or in any ether way. Neither deputy Yates or Clark testified at the hearing in the above cause, electing instead to implead their rights against self-incrimination as insured by Section 12 of the Declaration of Rights of the State of Florida (Tt. 111-127). Your commissioner excused each of them from testifying for the aforesaid reason (Tt. 126-127). The only testimony presented to me at the aforesaid hearing with reference to these alleged admissions as to the falsification of the footprint casts was of a most sketchy nature and was hardly as pointed as originally made out in the original statement of deputies Ledford and Griffin. See pages 5 through 32 and 33 through 58. The admittedly unusual delay in making known their claims raises grave doubt as to their motives; then or now. Their respective testimony, when compared with the allega *6 tions made in their original statement, reveals that while they were once quick to draw a series of conclusions therein, they were not ready or willing to give forth sworn testimony in that same regard. There is a notable absence of any testimony by either of them bearing on the state attorney’s known use of any allegedly falsified footprints. There is a similar absence of any testimony in that regard as to Sheriff Willis McCall. They did not testify that either the state attorney or the sheriff counseled or procured either deputies Yates or Clark or anybody else to create evidence of footprints or any other type. In any case, it appears to your commissioner that much of what they claim, even if taken as true, is now little more than unexplained conclusions on their part.
“Adverting to the sworn statements of deputies Yates and Clark made a part of respondent’s return, it is noted that each of these men, by these sworn statements, denied any and all allegations pertaining to their alleged criminal complicity.
“The claims and testimony of the former deputies, Ledford and Griffin, relative to an alleged remark by State Attorney Old-ham at the pre-trial conference that deputy Griffin made no reference to the word “rain” because it would “mess things up” was denied by all of respondent’s witnesses, who themselves were present at said pretrial conference save and except Deputy Sheriff Douglas Sewell (Tt. 219-230). He seemed to recall that deputy Griffin made some mention of “rain” but he did not believe that his remark related to rain at the scene of the crime at the pertinent time in question but rather just a general reference thereto (Tt. 227-228). All of the parties present at said pre-trial conference without exception denied ever having heard State Attorney Oldham suggest directly or otherwise that no one make any mention of rain. State Attorney Oldham himself testified (Tt. 209-214) and categorically denied that either deputies Griffin or Ledford made any remark whatever concerning rain and that he in fact made no mention that either of said deputies or anyone else should make no mention of rain or, for that matter, anything else. He further testified that at no time, including the present, did he have any knowledge or reason to suspect that the footprint evidence was in fact not authentic.
“Deputies Ledford and Griffin testified that when they arrived at the scene of the crime, their prefunctory examination of the surrounding- area revealed only three (3) partial footprints which they considered worthy of being poured as casts. These they covered in one manner or another so as to preserve them against obliteration. At this point they proceeded to trade the suspects with the dogs which they had brought to the scene for that purpose. Posed against their testimony as to the number and quality of footprints at the scene of the crime is that of all parties who arrived there at a later time as well as that of Deputy Spence who was the first law enforcement officer on the scene after the rape occurred. He testified (Tt. 171-197) that there were a host of tracks at all the windows and doors of the house in question as well as all around the house. He added that he was careful not to enter the area and perhaps ruin the tracks.
“Assistant State Attorney John McCormick testified that when he arrived at the scene of the crime there were plenty of good tracks available (Tt. 139-142; 163— 176). Sheriff Willis McCall testified that when he came on the scene that many good tracks were in existence and that more than a few were covered by his men (Tt. 143-162).
“Deputy Sheriff Douglas Sewell testified that many good quality footprints were in existence at the scene of the crime (Tt. 219-232) and further that he saw the casts being poured by Yates and Clark at the scene of the crime while he was inside the victim’s house conducting an investigation thereof.
“Deputy Sheriff Collis Godwin testified (Tt. 234 — 238) that upon his arrival at the *7 scene of the crime there were many good quality tracks in and around the region of the house and in fact a set of tracks leading away therefrom. He further testified that he and Spence picked up two (2) casts which had been poured, which casts Spence ultimately turned in to the I.D. room of the sheriff’s office in Tavares.
“The testimony of petitioners’ temporary accomplice, Levi Summers (Tt. 215— 219) who abandoned the original joint venture prior to the rape of Charlotte Wass, itself reveals that a great deal of activity was engaged in by him and petitioners in and about the windows and doors of the victim’s home.
“The confessions of petitioners Shuler and Chatman add considerable stature to the testimony of Levi Summers as well as to that of the witnesses presented by the state.
“The evidence with regard to the number of footprints and the quality thereof set out above compels me to conclude that the testimony of deputies Ledford and Griffin with reference thereto is not worthy of belief and that in fact there were ample footprints available at the scene of the crime from which good quality impressions could have been secured.
“With respect to the petitioners’ allegations as summarized by Subsection D above, the evidence adduced at the hearing reveals the following:
“The allegations of the petition for writ of habeas corpus as well as the testimony of former deputies Ledford and Griffin raised a question as to whether any casts could have been poured at the scene of the crime because of what they contend was rainfall of such magnitude that it would have obliterated any but the three partial tracks which they personally covered.
“The testimony of Ledford never concludes that it did rain at the scene of the crime at a time which would have pre-eluded the pouring of any footprint casts. The testimony of Griffin is clear in that his reference to rain at or about the time they were at the scene of the crime was actually to rain in the distance but not geographically close enough to have made any difference as to the tracks at the scene of the crime.
“Each of the state’s witnesses testified quite to the contrary in regard to whether rain occurred at or about the time when casts were or could have been poured at the scene of the crime. Deputy Sewell so testified (Tt. 219-230) ; Collis Godwin so testified (Tt. 234 — 238) ; Assistant State Attorney John W. McCormick so testified (Tt. 139-142; 163-176); Sheriff Willis V. McCall so testified (Tt. 143-162); Deputy Sheriff Joseph H. Spence so testified (Tt. 177-196).
“This compelling evidence is buttressed by the testimony of state witnesses Thomas Hanson (Tt. 239-246) and Perry Jeff coat (Tt. 247-252) ; both of whom kept detailed records of the rainfall, as evidenced by their own rain gauges, in the near proximity of the scene of the crime. Their testimony revealed that during the period in question no appreciable rain fell.
“Based upon the above, your commissioner finds from the evidence and testimony before him that either no rain fell at any of the critical periods in question or that if it did it was of such a negligible quantity that it could not have affected the ability to secure accurate footprint casts at the scene of the crime.
“With respect to the petitioners’ allegations as summarized by Subsection E above, the evidence adduced at the hearing reveals the following:
“Petitioners’ allegations that allegedly falsified footprint evidence was knowingly used by Lake County Sheriff Willis McCall is based exclusively on what former deputies Ledford and Griffin admit, in their *8 supporting statement, is simply their opinion. See petition for writ of habeas corpus. Neither of the aforesaid deputies ever testified directly or indirectly that either the state attorney or the sheriff had any knowledge with regard to the origin of the footprint evidence. The testimony of the state attorney and the sheriff (Tt. 209-214; Tt. 143-162) reveals that they each denied any knowledge that the footprint evidence was falsified. Sheriff McCall testified in addition thereto that there was no need for the falsification of such casts inasmuch as the footprints at the scene of the crime were plentiful and of such a quality as would have negated the need for any such action.
“Your commissioner concludes that this allegation has not been met in any way and therefore finds that the alleged complicity or involvement of the named state attorney and sheriff is in fact not as petitioners would represent.
“With respect to the petitioners’ allegations as summarized by Subsection F above, the evidence adduced at the hearing reveals the following:
“The testimony of the soil expert from the Federal Bureau of Investigation, one Richard W. Flach (Tt. 85-97) does appear, at least at first reading, to conclude that based upon his analysis of the soil samples sent his laboratory by the investigator of the Florida State Sheriffs Bureau, one Roma Trulock, that the footprint casts could not have been poured at the scene of the crime but could have been poured at the home of the former deputy Lucius Clark. The soil samples which were taken by investigator Trulock both from the scene of the crime and Clark’s backyard were taken some appreciable time (approximately 18 months) after the crime was committed. There is no testimony or evidence to demonstrate or even indicate that the soil conditions at these two places were not the same at the time the crime was committed. In fact Agent Flach reluctantly admitted that the natural slope of the terrain surrounding the victim’s home could conceivably (either by erosion or rainfall) result in the topsoil being removed to a respectable degree or depth of at least an inch. Such an admission on his part permits of a valid conclusion that the soil might well have been identical at the time the crime was committed and yet because of the aforesaid that the soils could have been different when the samples were taken by Trulock some 18 months later.
“Flach’s testimony, while perhaps somewhat compelling as far as it goes, simply did not, because of the aforesaid, in my view, preponderate. Because of this, I find that it is quite compatible for him to testify that his investigation may well have required him to conclude as he did and yet not conflict with the very real possibility of the topsoil differential which he admitted could be so. I cannot and do not consider that evidence in such a state to be an adequate basis upon which to find that the casts in question were in fact falsified.
“The testimony of F.B.I. agent Thompson, because of his own doubts and reluctance to take a positive position (Tt. 98-110) is, in my opinion, of no significant value to the issues at hand.
“The discussion of this phase of the case, in my view of the overall picture, is perhaps unnecessary to the correct decision of the matter. It must be kept in mind that the proof of the alleged pouring of the casts in Clark’s backyard is based solely on the testimony of Ledford who testified that Clark told him that he had poured them in his backyard. This testimony is denied by Clark. There is no evidence that the soil taken from Clark’s backyard was of an unusual or exceptional character not common to that section of the county. Such soil may have been generally common to that of other sections of that vicinity. In view of Ledford’s record of testimony in the several other gravely material *9 respects hereinabove noted having been proven to be false, little weight can be given to his statement that Clark made the remark attributed to him.
“It should be further noted that the Commissioner offered to Honorable Francisco A. Rodriguez, counsel for the petitioners, the opportunity to have further hearings to permit him to take the testimony of Clark and Yates after the disposition of the criminal charges against them pending in the Court in Orange County had been concluded. Mr. Rodriguez has now informed the Commissioner that he considers the statements of these two witnesses are already in the record and the cause might be concluded on the record already made and he desires no further hearing in respect to the matter.
“The issues were posed by petitioners’ allegations seeking a writ of habeas corpus in this Court. Said issues were joined by the respondent’s return in accord with this Court’s order so directing. Measured in that light, and in conjunction with the testimony presented to me as well as the exhibits, and having specifically found as I have in each of the aforementioned areas, I terminally find that petitioners have failed to meet the burden cast upon them in this matter. I further find, because of the aforesaid, that petitioners’ conviction has not been demonstrated to be in violation of the due process assured them by either the Florida or Federal Constitutions.
“WHEREFORE, your commissioner hereby respectfully recommends that the relief which petitioners seek in this cause, to-wit, that they be given a new trial, is not justified in the present state of the record and perforce should be denied.”
“Respectfully submitted,
/s/ L. L. Parks
L. L. Parks Circuit Judge (Retired) Commissioner.”
“IN THE SUPREME COURT OF FLORIDA
JULY TERM, A. D. 1962
ROBERT SHULER and JERRY CHATMAN, Appellants, -vs- CASE NO. 40,009 STATE OF FLORIDA, Appellee.
“ADDITION TO COMMISSIONER’S REPORT FILED IN THE ABOVE CASE
“In my report of May 1, 1963, to the Court, I failed to discuss the sworn statement of former Deputy Sheriff Griffin included in the Attorney General’s Answer and Return to the Petition and Writ, to the effect that he was present with Ledford- and heard Clark make a statement that he (Clark) had poured the casts in his backyard. Th'is statement of Griffin’s was not overlooked in my consideration of the matter although he did not testify concerning such matter at the hearing before your Commissioner. The record clearly reflects that both Ledford and Griffin closely and consistently collaborated for more than a year in their attempt to bring this matter to the attention of the law authorities and as a result this Habeas Corpus proceeding generated. In view of continued association and collaboration with Ledford, Griffin’s statement that he was present and heard Clark make the alleged statement can have no more weight than Ledford’s in the decision of the matter.”
“DONE this 8th day of May, A. D. 1963.
/s/ L. L. Parks
COMMISSIONER”
The Commissioner in this habeas corpus proceeding, who, although now retired, is a veteran jurist and who during his tenure of office enjoyed the reputation of being one of our most able circuit judges, was appointed by the Supreme Court to act *10 for the Court and was “duly authorized” to make findings of facts and to submit his recommendation. This he has done. His report shows that he very carefully and thoroughly performed the duties assigned to him.
 It should be borne in mind that this case is before us upon a petition for a writ of habeas corpus. The burden was upon the petitioners to overcome the presumption of validity of their convictions.[1] They failed by the evidence which they presented before the Commissioner to carry this burden. Moreover, we find in the record evidence which is ample[2] to sustain the findings of facts, conclusions drawn therefrom, and the recommendation made by the Commissioner.
The Rule to Show Cause issued September 26, 1962, is hereby discharged and the Petition for a Writ of Habeas Corpus is dismissed.
It is so ordered.
DREW, C. J., and THOMAS, THOR-NAL, O’CONNELL, CALDWELL and HOBSON (Ret.), JJ., concur.

. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770.

. Sitamore v. Mayo, et al., 154 Fla. 160, 17 So.2d 78.